## Denegre's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the following extracts from the adjudication of

STEARNE, J., Auditing Judge.—By the terms of his will, a copy of which, certified by counsel to be correct, is annexed hereto, the testator directed the payment of his just debts and funeral expenses; gave in equal portions to his wife, Sophia Rowley Denegre, and his daughter, Marie Louise Denegre Lavino, all the proceeds of his life insurance policies; gave to his said wife all his household goods, pictures, automobiles, and personal effects; gave the residue of his estate to the Girard Trust Company of Philadelphia, Alpin J. Cameron, and Walter D. Denegre, in trust to collect the income therefrom and distribute the same as follows: To pay during the minority of his granddaughter, Andrea Loraine Denegre, $5,000 per annum to her mother, Andrea Rector Denegre, for the support of herself and for the support, education, and maintenance of said granddaughter until the granddaughter should arrive at the age of 21 years, after which said payment of $5,000 per annum be increased to $7,000 and paid direct to the granddaughter and not to her mother (the provisions of this trust will be recited in full hereafter); one half of the balance of income from said residuary trust estate he gave to his said wife, for her life, and the remaining one half thereof, and, upon the death of his said wife, the whole of the balance of said net income, to be paid quarterly to his said daughter, for her life. Other provisions in connection with trust of the residuary estate are not here recited as both decedent's widow and his daughter survive. . . .

Andrea Rector Denegre, daughter-in-law of the decedent, the widow of his deceased son, claims a portion of the income which, under the will, is payable to the decedent's granddaughter, Andrea L. Cerasoli. The legal inquiry is whether the gift of such income is for the granddaughter's sole use or whether, under the wording of the will, the daughter-in-law is entitled to receive from the granddaughter an amount, to be fixed by the court, for her reasonable support and maintenance. As the dispute is between the granddaughter and her mother, I shall hereafter designate the parties as "mother" and "daughter".

The testamentary provisions read as follows:

"Fifth: (1) To pay during the minority of my granddaughter, Andrea Loraine Denegre, the sum of Five Thousand Dollars ($5,000) per annum to her mother, Andrea Rector Denegre, widow of my deceased son, for the support of herself and for the support, education and maintenance of the said Andrea Loraine Denegre, until my said grand-daughter arrives at the age of twenty-one years; but in the event of the death, or remarriage of Andrea Rector Denegre (whichever event shall first occur) before my grand-daughter reaches the age of twenty-one, then the whole of the Five Thousand Dollars ($5,000) per annum shall be expended by my Trustees for the support, education and maintenance of my said grand-daughter.

"(2) When my grand-daughter, Andrea Loraine Denegre, becomes twenty-one years of age this payment of Five Thousand Dollars ($5,000) a year for her benefit shall be increased to seven thousand dollars per annum and shall be payable direct to her and not to her mother.

"(3) Upon the death of my grand-daughter, Andrea Loraine Denegre, there shall be set aside from my estate by my Trustees the sum of One Hundred Thusand Dollars ($100,000) out of the income of which shall first be paid Twenty-five Hundred Dollars ($2,500) a year to Andrea Rector Denegre, until her death or remarriage, whichever event shall first occur. The balance of the income from the said One Hundred Thousand Dollars ($100,000) to be used by my Trustees for the support, education and maintenance of the children, if any, of my said grand-daughter, during their minority. The principal of said One Hundred Thousand Dollars ($100,000) to be equally divided among said children, if any, at their majority each child getting his share of the principal as he reaches twenty-one years of age, but subject to the payment of the Twenty-five Hundred Dollars ($2,500) a year to Andrea Rector Denegre as and for the time above set forth.

"In the event of the death of my grand-daughter, Andrea Loraine Denegre, without leaving any descendants her surviving, the said sum of One Hundred Thousand Dollars ($100,000) shall fall into and become a part of my residuary estate.

"(4) I have left nothing to the widow of my deceased son until after the death of my said grand-daughter as I expect the income herein provided for my grand-daughter shall be amply sufficient to care for herself and her mother."

The testamentary scheme appears to be plain and unambiguous; out of his residuary estate, placed in trust, from the income he creates an annuity of $5,000 for the benefit of his granddaughter until she attains the age of 21 years. Until such time arrives, it is payable to the mother "for the support of herself [the mother] and for the support, education and maintenance of the said [granddaughter]". The testator contemplates the possible death of the mother, or her remarriage, in which event he directs *"the whole of the $5,000"* shall be expended by his trustees for the benefit of his granddaughter until she reaches 21 years of age.

The testator then visualizes the attainment of his granddaughter's majority. His words are significant. When this time arrives, he says the $5,000 a year *for her benefit* shall be increased to $7,000 per annum and shall be payable *"direct to her and not to her mother."*

The next step in the testamentary scheme is enlightening. He contemplates the death of his granddaughter, with and without children. When the granddaughter dies, a trust fund of $100,000 is to be set aside; out of the income the mother is to receive $2,500 per year for her life or until her remarriage; the balance of the income is to go to the granddaughter's children for their minorities, and the principal thereafter (subject to the daughter-in-law's annuity). In default of children by the granddaughter, the fund, subject to the annuity, falls into the residuary estate.

By paragraph 4 the testator expressly declares that he has left nothing to the widow of his deceased son, until after the death of his granddaughter. However, following this declaration, he uses a phrase which gives rise to this litigation. He says: "As I expect the income herein provided for my granddaughter shall be amply sufficient to care for herself and her mother."

The mother's claim to share the income with the daughter to the extent of her reasonable living expenses is based, as I understand it, upon the original provision (paragraph 1) for the daughter of $5,000 per annum, payable to the mother, and for use of *both* the mother and the daughter, coupled with his explanation in paragraph 4 as to why he left the mother *nothing* until the daughter's death, viz.: that the income provided for the daughter should be amply sufficient to care for the daughter and her mother.

The interest of the parties is fixed by the will. It becomes a pure question of law upon a construction of the will, seeking the testamentary intent. It seems plain and unambiguous that the granddaughter—and not the mother—was testator's primary object of bounty. True it is that until the granddaughter reached the age of 21 years the $5,000 annual income was payable to the mother and was to be used by *both.* Yet the mother was the natural guardian and the one who would, in every human probability, live with and care for the minor until she attained her majority. It is a fair inference of intention, under the wording of this section of the will, that it was the minor's welfare, rather than a benefit to the mother, which motivated the testamentary provision that until the minor's majority the income should be so paid and applied.

In the following paragraph (no. 2) all doubt is expelled, because testator expressly says that such income was for *"her* [the granddaughter's]' benefit". To allay all possibility of question, when testator increases the income to his granddaughter upon her attaining her majority, he says thereafter such sum shall be "payable direct to her and *not to her mother."*

Therefore, in unmistakable language, it clearly appears, and I so rule, that after the daughter attained 21 years of age she took an absolute and vested interest in $7,000 of income per annum for and during the full term of her natural life.

The question then arises whether or not this absolute and vested life estate in income was cut down by the subsequent clause (no. 4) in the will reading as follows: "I have left nothing to the widow of my deceased son until after the death of my said grand-daughter as I expect the income herein provided for my grand-daughter shall be amply sufficient to care for herself and her mother." I rule, as a matter of law, that it was not. It is a fundamental principle of law that a vested interest, once given, shall not be cut down to a lesser estate by a subsequent provision, unless a plain and unequivocal intent is expressed. The cases are numerous, but I will only cite Eberle v. Wood et al.,

304 Pa. 403, and Graham v. Gamber et al., 95 Pa. Superior Ct. 187. I cannot find that testator's expression that he gives the mother *nothing* (because the income given to the daughter should be amply sufficient for both) cuts down the previously granted absolute estate to the daughter and thereby (despite testator's direction) does give the mother a sufficient sum of money for her reasonable living expenses.

While I did not consider that there was any ambiguity in the present will, nevertheless, as the statement of the testator in paragraph 4 might give rise to some question as to his testamentary intent under Lippincott's Estate, 276 Pa. 283, Pearson's Estate, 280 Pa. 224, and Conner's Estate, 302 Pa. 534, I permitted testimony as to the situation of the testator and the circumstances attending him when he made his will. A certain Dr. William Miller Ford was called to establish that he had acquainted testator with the serious nature of a disease which the granddaughter had at the time. In substance, it was to the effect that the child would probably not reach maturity, would never marry, and, if so, would never bear children. The witness frankly conceded that his prognosis was "100 percent wrong". The underlying theory was that testator was acquainted with the probabilities and intended *both* the mother and daughter to benefit. All of this evidence is valueless when we consider that testator did, in truth and in fact, despite this alleged information, contemplate the marriage of his granddaughter and birth of issue to her. He specifically provided in paragraph 3 of item 4 of his will for children of his granddaughter. I therefore rule that there is nothing in the evidence of surrounding facts and circumstances which affects the above rulings.

The testator revealed, by implication, that he anticipated the daughter would provide for her mother out of her income, but there is nothing in the will which makes it obligatory upon the daughter to do so. The mother is therefore not entitled legally to any part of her daughter's income. . . .

*Albert Smith Faught* and *Isaac C. Sutton,* for exceptant.

*Milton H. Belber,* contra.

VAN DUSEN, J., October 20, 1933.—Testator had a granddaughter (a daughter of a deceased son) who was sickly. He provided an annuity which during her minority was to be paid to her mother "for the support of herself and for the support, education and maintenance of" the granddaughter. If the mother died or remarried, the income was to be expended by the trustees for the benefit of the granddaughter. When this granddaughter arrived at 21 years of age, "this payment of $5,000 a year for her benefit shall be increased to $7,000 per annum and shall be payable direct to her and not to her mother". After the death of the granddaughter, testator provided an annuity of $2,500 for the girl's mother, and he then explained: "I have left nothing to the widow of my deceased son until after the death of my said granddaughter as I expect the income herein provided for my granddaughter shall be amply sufficient to care for herself and her mother". The mother now claims a reasonable allowance out of the $7,000 per annum for her own support. We think the auditing judge was correct in denying this claim.

It is apparent that the testator primarily had his grandchild in mind and that the annuity is "for her benefit". The direction to pay the money to the girl's mother during her minority is evidently because of that minority, and the participation in the benefit of the money by the mother during that period is incidental to the minority.

It was not necessary that the testator should explain why he left a gap in the provision for the mother; but he did give an explanation, and it is that he

expected that his grandchild would care for her mother during that period. He is careful, however, not to put any compulsion upon her to do so; and we do not think we can deduce from his rather vague language any modification of what, but for that language, is an absolute gift to his granddaughter after her minority. He mentions no definite sum, and does not even use precatory words addressed to his granddaughter. The language used is very different from that used in Wilstach's Estate, 27 Dist. R. 288, which directed that a definite annuity be deducted from and paid out of the bequest.

Evidence outside of the will was offered to show the testator's intention. We are entitled to know the "circumstances surrounding the testator" to help us construe his will. But this means facts such as the weak physical condition of the granddaughter, and does not include advice given to him or statements made by him.

The exceptions are dismissed and the adjudication is confirmed absolutely.